UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REBECCA JEAN,<br><br>Plaintiff,<br><br>v.<br><br>SEATTLE CREDIT UNION,<br><br>Defendant. | CASE NO. 2:25-cv-02140-LK<br><br>ORDER RESOLVING DISCOVERY DISPUTE |

This matter comes before the Court on the parties' joint Local Civil Rule 37 submission regarding their discovery dispute. Dkt. No. 47. For the reasons stated below, the Court grants Defendant Seattle Credit Union's request for a protective order as to Request for Production 41, and grants in part and denies in part Seattle Credit Union's request for a protective order as to Request for Production 71.

## I. BACKGROUND

Plaintiff Rebecca Jean alleges that her former employer, Seattle Credit Union, discriminated against her under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–e-

17, the Washington Law Against Discrimination, Seattle municipal code, and King County code. Dkt. No. 43 at 2. After Jean propounded more than 120 Requests for Production ("RFPs"), Seattle Credit Union filed a motion for a protective order. Dkt. No. 27. Following several Federal and Local Rule violations by Jean in connection with her response to the motion, the Court ordered her to show cause why sanctions should not be imposed and temporarily stayed the case. Dkt. No. 39. The Court ordered the parties to meet and confer regarding Jean's discovery requests and submit a joint status report "detailing the outcome of the meet and confer and indicating whether any portions of Seattle Credit Union's motion for a protective order are mooted." Dkt. No. 44 at 3. The parties' joint status report indicated that they resolved most of the discovery disputes, but could not reach agreement regarding RFPs 41 and 71. Dkt. No. 45. The Court then issued a minute order discharging its order to show cause, lifting the stay on the case, ordering the parties to submit a joint submission pursuant to Local Civil Rule 37(a)(2) regarding their outstanding discovery disputes, and denying Seattle Credit Union's motion for a protective order as moot. Dkt. No. 46.[1] The parties filed the joint motion now before the Court. Dkt. No. 47.

## II. DISCUSSION

As mentioned, the parties continue to dispute Jean's RFPs 41 and 71:

> REQUEST FOR PRODUCTION 41: Produce attendance records for all Branch Representatives employed at the Northgate branch from March 27, 2021 through January 4, 2024 showing all absences, sick calls, tardiness, and any discipline imposed for attendance issues.
>
> REQUEST FOR PRODUCTION 71: Produce all documents reflecting SCU's policy regarding employee eligibility for promotions or advancement positions while under active written warnings or disciplinary action and all records showing how that policy was applied to other employees at SCU from January 1, 2014 through January 4, 2024.

[1] Jean incorrectly asserts that the August 14, 2026 minute order, Dkt. No. 46, "requir[ed] that the parties meet and confer to attempt in good faith to resolve the dispute regarding the two remaining items," Dkt. No. 47 at 2. The Court's July 15, 2026 order required the parties to meet and confer regarding the disputes raised in Seattle Credit Union's motion for a protective order, and the August 14, 2026 order required them to file an LCR 37(a)(2) submission.

*Id.* at 3, 6. Seattle Credit Union seeks to limit these requests; Jean opposes any limitations. *Id.* at 1–2.

**A. Legal Standard**

In general, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering," among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). District courts have discretion to limit discovery "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). And the Court may limit discovery when the discovery at issue "can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i).

"The party seeking a protective order has the burden of establishing good cause and must show prejudice 'for each particular document it seeks to protect.'" *Fierro Cordero v. Stemilt AG Servs., LLC*, 142 F.4th 1201, 1207 (9th Cir. 2025) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). If a court finds particularized harm that would result from public disclosure, it must "balance[ ] the public and private interests to decide whether a protective order is necessary." *Id.* (quoting *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)).

**B. Request for Production 41**

RFP 41 seeks all "attendance records" for all similarly situated Seattle Credit Union branch employees "from March 27, 2021 through January 4, 2024" and information on "any discipline imposed for attendance issues." Dkt. No. 47 at 3. Seattle Credit Union argues that this RFP is

overly broad, vague, unduly burdensome, and seeks information that is not relevant to the case. *Id.* at 3–4. It contends that the burden is significant because identifying "every time an employee was absent or late, every time an employee called out sick, and any discipline imposed for attendance issues" would require "manually cross referenc[ing] schedules" for nearly three years with the relevant employee files to determine whether employees were disciplined for attendance issues. *Id.* at 4. Seattle Credit Union further contends that the request has no probative value because it has already agreed to "produce personnel files of [Jean's] coworkers," which will show any discipline history "if there is any." *Id.* Jean contends that the records are relevant because Seattle Credit Union represented to the Equal Employment Opportunity Commission that "attendance was a cause of termination," but stated in its initial disclosures that her attendance record was *not* the cause for her termination, so "attendance records showing how similarly situated employees were treated" is "essential evidence of pretext and discriminatory application of policy." *Id.* at 5. She contends that how "other employees' absences were handled at the same branch, for the same time period" is "comparator evidence at the heart of a disparate treatment claim." *Id.*

Jean does not address Seattle Credit Union's argument that it has already agreed to produce the employee files of Plaintiff's coworkers who worked with her, which it avers "would contain any records regarding discipline imposed for attendance" issues. *Id.* This evidence is exactly the type of comparator evidence that Jean says she requires. Jean also does not explain why she requires nearly three years of attendance records while also claiming that what is relevant is how "other employees' absences were handled at the same branch, for the same time period"—which was less than one year. *Id.*; *see also* Dkt. No. 43 at 3 (Jean's employment with Seattle Credit Union began on March 27, 2023 and ended on January 4, 2024). Finally, the Court observes that the purported relevance of this information is at best unclear, as attendance records appear untethered from any claim in Jean's complaint. *See generally* Dkt. No. 43.

Accordingly, the significant burden to Seattle Credit Union of producing the requested documents outweighs whatever minimal additional probative value the information may have. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). The Court therefore grants Seattle Credit Union's request for a protective order as to RFP 41.

**C. Request for Production 71**

This RFP seeks "all documents" reflecting Seattle Credit Union's "policy regarding employee eligibility for promotions or advancement positions while under active written warnings or disciplinary action" as well as "all records showing how that policy was applied to other employees at SCU from January 1, 2014 through January 4, 2024." Dkt. No. 47 at 6. Seattle Credit Union notes that it "has already produced its handbook which reflects all of [its] policies and procedures," including its "Basic Codes of Employee conduct and discipline," and requests that the request for records showing how the policy was applied be limited to documents reflecting its "policy regarding employee eligibility for promotions or advancement positions while under active written warnings or disciplinary action from January 1, 2023 to January 4, 2024." *Id.* at 6–7. It argues that a single year of records, rather than ten years' worth, is "a reasonable limitation and achieves [Jean's] goal of presenting comparator evidence." *Id.* at 6. Jean asserts that one year of records is "not sufficient to establish or refute a pattern" and that the ten-year period "is reasonable." *Id.* at 7.

The Court concludes that the burden of producing ten years' worth of records outweighs the additional probative value of any pattern that might exist in those far-removed years. *See Brinkman v. Sprinkler Fitters Loc. #417*, No. 19-CV-2981 (KMM/TNL), 2022 WL 420881, at *25 (D. Minn. Feb. 11, 2022) (finding plaintiff's request for personnel files of comparators over nine years to be "exceptionally long," particularly considering that plaintiff worked for defendant for only three months, and ordering production of three years of such files instead); *U.S. E.E.O.C. v.*

*McCormick & Schmick's Seafood Restaurants*, No. CIV.A. DKC-11-2695, 2012 WL 3563877, at *7 (D. Md. Aug. 16, 2012) (finding plaintiff's request for personnel files of comparators over four years to be "overly broad," and ordering production of two years of such files instead). However, the Court finds that Seattle Credit Union's proposal to produce records reflecting its "policy regarding employee eligibility for promotions or advancement positions while under active written warnings or disciplinary action from January 1, 2023 to January 4, 2024," *id.* at 6, to be too narrow. *See Brinkman*, 2022 WL 420881, at *25; *McCormick & Schmick's Seafood Restaurants*, 2012 WL 3563877, at *7. To strike a reasonable balance between the potential probative value of such records and the burden to Seattle Credit Union, the Court orders Seattle Credit Union to produce records reflecting application of its policy regarding employee eligibility for promotions or advancement positions while under active written warnings or disciplinary action from January 4, 2021 to January 4, 2024.

## III. CONCLUSION

For the above stated reasons, the Court GRANTS Seattle Credit Union's request for a protective order as to RFP 41. Seattle Credit Union need not produce the documents requested in RFP 41. As for RFP 71, the Court GRANTS IN PART and DENIES IN PART Seattle Credit Union's request to narrow the scope of the request. Within 30 days of the date of this Order, Seattle Credit Union shall produce records reflecting application of its policy regarding employee eligibility for promotions or advancement positions while under active written warnings or disciplinary action from January 4, 2021 to January 4, 2024.

Dated this 13th day of October, 2026.

Lauren King
United States District Judge